UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT**

I, Molly E. Reale, Special Agent of the Department of Homeland Security, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I have been employed as a Special Agent of the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") since September 2020. I received training at the Federal Law Enforcement Training Center, Criminal Investigator Training Program ("CITP") and Homeland Security Investigations Special Agent Training ("HSISAT"). Prior to being employed with HSI, I was a Special Agent with the United States Secret Service for approximately four years. I have gained training and experience through training at the Federal Law Enforcement Training Center's Criminal Investigator Training Program. I am presently assigned to the HSI office in Hartford, Connecticut. As part of my duties, I am authorized to investigate violations of the laws of the United States, including but not limited to criminal violations relating to the sexual exploitation of children, child pornography, coercion and enticement, and transportation of minors, as well as violations of Title 18, United States Code §§ 2422, 2423, 2251, and 2252A (and conspiracy and attempt to commit the same). I am authorized by law to request search warrants. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws and duly authorized by the Attorney General to request a search warrant. I am one of the officers involved in the investigation that is the subject of this affidavit and have personally participated in the investigation concerning the violations of the

federal laws listed herein.

2. I am currently investigating Nicholas BURNHAM, an adult male born in 1991, for the following federal offenses: receiving and distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession and access with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (collectively, the "TARGET OFFENSES").

3. BURNHAM's criminal history includes a 2016 conviction for possession of child pornography in the 2nd degree. Conn. Gen. Stat.§ 53a-196e. His probation for the 2016 offense was terminated in 2018 after he was convicted of possession of child pornography in the 1st degree. Conn. Gen. Stat. § 53a-196(d)(a)(1). In October 2023, BURNHAM began serving a term of special parole. As discussed more fully below, BURNHAM's special parole was revoked in December 2024. He is currently in state custody.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. I make this affidavit in support of an Application for a Search Warrant to search the contents of a black SanDisk Ultra 3.0 256GB USB (the "TARGET DRIVE") turned over to HSI by parole officers from Connecticut Parole Services. As further explained below, the TARGET TARGET DRIVE contains data digitally extracted from three (3) devices seized by parole officers from BURNHAM's residence on December 17, 2024:

   a. One (1) Android Moto G 14 cellular phone (Model: moto G play)

   b. One (1) Android 14 cellular phone (Model: Vibe-N159V), Serial number ending in -2760)

   c. One (1) Android 14 cellular phone (Model: Vibe-N159V, Serial number ending in -1574) (collectively, "BURNHAM's DEVICES")

5. The TARGET DRIVE remains in the custody of HSI in Hartford, Connecticut. To date, the TARGET DRIVE has not been forensically examined by HSI.

6. Based on the information set forth in this Affidavit, I believe there is probable cause to believe that the data on the TARGET DRIVE, which is described in Attachment A and incorporated herein by reference, contains items that constitute contraband, instrumentalities, fruits and evidence of the TARGET OFFENSES as specified in Attachment B, which is incorporated herein by reference.

7. The factual information contained in this affidavit is based in part on information provided by other members of local, state, and federal law enforcement; my own investigation to include personal observations, documents, and other investigative materials that I have reviewed; and my training and experience as a Special Agent with HSI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the TARGET OFFENSES are located within the TARGET DRIVE.

## TARGET OFFENSES

8. As noted above, this investigation concerns alleged violations of:

   a. 18 U.S.C. 2252A(a)(2), which prohibits a person from knowingly receiving or distributing (A) any child pornography, as defined in 18 U.S.C. § 2256(8), using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

   b. 18 U.S.C. § 2252A(a)(5)(B), which prohibits a person from knowingly possessing

3

or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

9. The following definitions apply to this Affidavit and Attachment B:

    a. "Chat," refers to the process of communicating, interacting and/or exchanging messages over the Internet. It involves two or more individuals that communicate through a chat-enabled service or software. Chat is also known as chatting, online chat or Internet chat.

    b. "Child erotica," means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions. In addition, child erotica can be used to describe images that depict sexually explicit conduct, but your affiant believes the individuals depicted are "age difficult", meaning that your affiant is not certain whether the image depicts a person under the age of 18.

    c. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d. "Computer," refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

e. "Electronic Device passwords and data security devices," consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

f. "Internet Protocol address" or "IP address," refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g. "Internet Service Providers" ("ISPs"), are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i. "Mobile applications," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

j. "Records," "documents," and "materials," include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

k. "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

l. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

m. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is

capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

10. In October 2023, BURNHAM began serving a term of special parole. BURNHAM's conditions of special parole included a condition to permit parole or its agents ("CT parole") to search his person, possessions and vehicles for compliance with his conditions. In addition, he was subject to the following "enhanced internet and device monitoring" condition:

> YOU UNDERSTAND THAT YOU HAVE NO REASONABLE EXPECTATION OF PRIVACY IN THE USE OF ANY OF YOUR ELECTRONIC DEVICES AND YOU AGREE AND WILL COMPLY WITH THE SEARCH, INSPECTION AND/OR SEIZURE OF SUCH DEVICES AT ANY TIME BY AN AUTHORIZED AGENT OR EMPLOYEE OF THE DEPARTMENT OF CORRECTION OR BOARD OF PARDONS & PAROLES. YOU UNDERSTAND THAT YOU ARE RESPONSIBLE FOR ALL MATERIALS AND INFORMATION ON ANY OF YOUR ELECTRONIC DEVICES AND THAT YOU MAY BE REQUIRED TO INSTALL AND PAY FOR SOFTWARE PROGRAMS TO MONITOR YOUR USE OF SUCH DEVICES.

11. On December 17, 2024, CT parole learned that BURNHAM was using a dating application called, "OK Cupid." A review of BURNHAM's monitoring software showed that on November 3, 2024, BURNHAM used his monitored/authorized device as a secondary verification mechanism to establish an account on OkCupid  The "secondary verification" message was a sign to parole officers that BURNHAM had access to another device (or devices) which was not authorized or monitored by parole.

12. On December 17, 2024, Parole Officers and Detectives with the Connecticut State Police (CSP) conducted a search of BURNHAM's residence in East Hartford, Connecticut. During the search of the residence, BURNHAM reported to Parole Officers that he had an

7

unauthorized cell phone hidden beneath a dresser drawer in his bedroom and it contained pornography. Law enforcement discovered that phone and two additional unauthorized cell phones in that same location (BURNHAM's DEVICES).

13. BURNHAM's DEVICES were seized by parole, and BURNHAM was remanded to custody. At the time of the remand, when BURNHAM was asked how much content depicting child pornography would be found on the phones, BURNHAM replied "way more than I've ever had. It's bad," BURNHAM also commented that he was almost relieved to be caught, so that it didn't progress into physically harming anyone.

14. A preliminary review of BURNHAM's Devices showed various messaging applications, some of which include encryption features. The applications included but are not limited to the following: Omegle, Chatous, Tellonym, Discord, Telegram, ChitChat, AnonChat, RandoChat, Swish, HotTalk, Emerald, Thundr and Kik.

15. On December 24, 2024, PO DeVylder submitted BURNHAM's Devices to the Connecticut Department of Emergency Services and Public Protection, Division of Scientific Services ("DSS") for forensic examination.

16. On March 5, 2025, I received a copy of the DSS report describing the electronic forensic examination of BURNHAM's DEVICES.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND/OR ATTEMPT TO VIEW CHILD PORNOGRAPHY

17. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who receive, possess and/or attempt to view child pornography:

    i. Such individuals often receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

    ii. Such individuals may collect child pornography and/or child erotica in a variety of formats including electronic and hard copy including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.

    iii. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.

    iv. Such individuals often maintain their child pornography in a digital or electronic format such as a computer, cell phone or other electronic storage. These visual depictions are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

    v. Importantly, evidence of such activity, including deleted child pornography, often can be recovered by law enforcement using forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

    vi. Such individuals often utilizes social media platforms to share sexually explicit material and communicate with others who are interested in the sexual exploitation of minors. Social media platforms allow users to interact with each other in a quick and seemingly anonymous fashion.

## BACKGROUND ON CHILD PORNOGRAPHY AND MOBILE DEVICES

18. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

    a. Digital technology has dramatically changed the way in which individuals interested in child pornography interact with each other. Mobile devices basically serve four (4) functions in connection with child pornography: production, communication, distribution, and storage.

    b. Child pornographers can now use smartphones with cameras to take a photograph, when the photograph is taken it is saved as a digital file that can be

9

directly transferred to a computer by simply connecting the camera or smartphone to the computer. In the last ten (10) years, the resolution of pictures taken by smartphones has increased dramatically, meaning that such pictures have become sharper and crisper. Photographs taken on a smartphone may be stored on a removable memory card in the smartphone. These memory cards often store up to 32 gigabytes of data or more, which provides enough space to store thousands of high-resolution photographs.

c. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

d. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Google Mail, Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used; however, evidence of child pornography can be found on the user's mobile device.

e. As is the case with most digital technology, communications by way of a mobile device can be saved or stored on the mobile device used for these purposes. Storing this information can be intentional (*i.e.*, by saving photos as a files on the device or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or folders). In addition to electronic communications, mobile device user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### TECHNICAL TERMS RELATING TO ELECTRONIC DEVICES

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

> a) **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c) **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d) **GPS**: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e) **PDA**: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example,

11

PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f) **Tablet**: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g) **IP Address:** An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h) **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I know that BURNHAM's DEVICES have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

21. Based on my knowledge, training, and experience, I know that electronic devices, such as a cellular phone, can store information for long periods of time. Similarly, things that

have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the TARGET OFFENSES, but also forensic evidence that establishes how BURNHAM's DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DRIVE because:

   a. Data recovered from storage mediums can provide evidence of a file that was once on the storage mediums but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
   b. Forensic evidence extracted from a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of Examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying the TARGET DRIVE or the contents therein. Consistent with Rule 41(e)(2)(B), it is also requested that the warrant be deemed executed once the forensic exam of the TARGET DRIVE

has been attempted, and that review of the contents of the TARGET DRIVE is permitted at a later time. The later review may require techniques, including but not limited to computer-assisted scans of the entire device, that might expose many parts of a contents to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence of the distribution, receipt and or possession of child pornography and visual depictions involving the use of minors engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B), is located in the TARGET DRIVE, as more fully described in Attachment A to this affidavit.

26. In consideration of the foregoing, your affiant respectfully requests that this Court issue an order authorizing the search of the TARGET DRIVE, as more fully described in Attachment A, for the items, materials and records more specifically identified in Attachment B.

*Molly Reale*
Special Agent Molly Reale
Department of Homeland Security Investigations

Subscribed and sworn to before me on _March 18_ 2025, in Hartford, Connecticut.

Hon. Thomas O. Farrish
United States Magistrate Judge

14

## ATTACHMENT A

### Property to be Searched

The property to be searched is a black SanDisk Ultra 3.0 256GB USB (the "TARGET DRIVE") turned over to HSI on March 3, 2025, by parole officers employed by the State of Connecticut Department of Corrections.

The TARGET DRIVE contains data digitally extracted from three (3) devices seized by parole officers from NICHOLAS BURNHAM's residence on December 17, 2024:

    a.    One (1) Android Moto G 14 cellular phone (Model: moto G play)

    b.    One (1) Android 14 cellular phone (Model: Vibe-N159V), Serial number ending in -2760)

    c.    One (1) Android 14 cellular phone (Model: Vibe-N159V, Serial number ending in -1574) (collectively, "BURNHAM's DEVICES")

The TARGET DRIVE is currently in the custody of HSI and is stored at 450 Main Street, Hartford, CT 06103.

This warrant authorizes the forensic examination of the TARGET DRIVE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Items to be Seized

1.  All property, records, and information on the TARGET DRIVE, described in Attachment A, that constitute contraband and evidence, fruits, and instrumentalities of violations 18 U.S.C. 2252A(a)(2) (distributing and receiving child pornography), and 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) (collectively the "TARGET OFFENSES") from in or about October 2023 to the present, including:

    a. The associated telephone number, ESN number, model number, serial
    b. number, and SIM card number each of the BURNHAM DEVICES;
    c. Child pornography, as defined in 18 U.S.C. § 2256(8) and/or depicting minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), including any associated metadata and/or EXIF information;
    d. Child erotica;
    e. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to camera software, software to record, playback or display pictures, images, videos, movies and communication and file transfer applications;
    f. Records concerning messaging and/or image sharing applications, including evidence of installation or use of Omegle, Chatous, Tellonym, Discord, Telegram, ChitChat, AnonChat, RandoChat, Swish, HotTalk, Emerald, Thundr and Kik. ;
    g. Records of internet activity, including logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any search engine and records of user-typed web addresses;;
    h. Any and all notes, documents, records, correspondence, and materials, pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);
    i. Any and all names, addresses, contact information or lists of names, addresses or contact information, in any format and medium, of those who may have been contacted by computer or other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);
    j. Any and all notes, documents, records, or correspondence, in any format or medium, concerning communications about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography;
    k. Any and all notes, documents, records, or correspondence, in any format or medium, concerning membership in online groups, clubs, or services that provide

       or make child pornography accessible to members;
l. Any and all records, documents, invoices and materials, in any format or medium that concern any accounts with an Internet Service Provider;
m. Any and all records, documents, invoices and materials, in any format or medium that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage;
n. Records or documents evidencing ownership of the BURNHAM DEVICES;
o. Evidence of who used, owned, or controlled the BURNHAM DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
p. Evidence of software that would allow others to control the BURNHAM DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software and evidence of the lack of such malicious software;
q. Evidence of the attachment to the BURNHAM DEVICES of other storage devices or similar containers for electronic evidence;
r. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the BURNHAM DEVICES;
s. Evidence indicating the geographic location of the BURNHAM DEVICES when it was accessed or used during the TARGET OFFENSES;
t. Records of or information about Internet Protocol addresses used by the BURNHAM DEVICES; and
u. Records of or information about the BURNHAM DEVICES's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

      Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. Consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the subject computer has been physically seized, and that review of the contents of the subject computer is permitted at a later time.

      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.